IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EUGENE DOUGLAS, JR. | * | |
| Plaintiff | * | |
| v | * | Civil Action No.  DKC-11-255 |
| GARY D. MAYNARD, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending in the above-captioned civil rights case are a Motion to Dismiss (ECF No. 22) filed on behalf of Defendants Correctional Medical Service, Kathy Killman, and Nixen (hereinafter "Medical Defendants") and a Motion to Dismiss or for Summary Judgment (ECF No. 26) filed on behalf of the remaining Defendants who are employees of the Division of Correction.  After granting his Motions for Extensions of Time[1] on five different occasions, Plaintiff failed to file an opposition in response to either dispositive motion.  ECF No. 29, 32, 37, 39, and 46.

**Background**

Douglas claims that, on July 30, 2007, Defendant Culotta assaulted him by ramming his head into the frame around the doorway of his cell and slamming him face first to the ground while he was handcuffed.  He was then escorted to a disciplinary segregation cell on the orders of Lt. Barnes.  He states he was escorted by Officers Westbrook, Whittington, and Lowe, while Officer Bromley video-taped the transport.  He claims that, upon his arrival at cell 4-C-1 he was forced to his knees and the officers forcefully removed his clothes.  Douglas claims that the cell

---

[1] Plaintiff claimed he was not being given access to legal materials and could not prepare his response.  The court required counsel for the Division of Correction to respond to the allegations.  ECF No. 37.  The status report filed by Defendants established that Plaintiff's claim was baseless.  ECF No. 40.

was infested with insects and that there was human waste and food on the walls, door, floor, and window. He claims that he was confined to this cell from July 30, 2007 through August 3, 2007 and that he was denied, among other things, medication, food, water, clothing, and legal materials. ECF No. 1 at pp. 8 – 9.

Douglas claims that, on August 12, 2007, he was denied breakfast "for the second time." *Id*. at p. 10. He further claims that on August 23, 2007, Defendant Smith threw a bag lunch into his cell which contained four slices of white bread, milk, and packages of peanut butter. When Douglas alerted Smith that he is allergic to peanuts, he claims that Smith stated "so what." *Id*. Douglas then spoke with Officer Ashby about the contents of his bag lunch and claims that Ashby told him he could not do anything about it since all the bags contained peanut butter. *Id*. Additionally, Douglas claims that: he was denied breakfast on August 28, 2007 by Officers Gunter, Turner and Byrd who lied and said he had improperly blocked the window in his cell; he was denied breakfast on October 24, 2007 by Officers Davis and Turner; he was denied breakfast on February 4, 2008, by Officers Davis and Gunter; and he was served a different, less appetizing meal than the general population received on October 1, 2008 by Officer Ashby. *Id*. at pp.11, 12, and 14.

With respect to sending and receiving mail, Douglas claims that he received legal mail, which he does not describe, dated August 2, 2007, on August 13, 2007. He asserts that Officer Wright withheld part of his legal mail to cover up an illegal withholding of legal mail. ECF No. 1 at p. 10. Douglas asserts that, on January 14, 2008, he received "priority mail" marked January 4, 2008, which was opened. He claims that a picture, four legal documents, and a money order was missing from the package. Douglas states that when he spoke with Officer

2

Wooten about his mail, he was referred to Sergeant Copeland who told Douglas to contact the mail room. *Id* at p. 12.

Douglas further claims that on February 6, 2008, he learned during an Inmate Grievance Office (IGO) hearing that two documents used against him in a disciplinary hearing had been stolen by Culotta and Ward. *Id*. Douglas states that he learned during a legal phone call on February 22, 2008, that nine documents he had mailed to Irene Hardy were stolen from the outgoing mail.

Douglas claims that, on April 29, 2008, Officer McGee was escorting him to the dayroom for recreation when Officers McGee, Westbrook and Sergeant Ziolkowski entered his cell and trashed it, "mixing" his legal documents. Douglas also claims that McGee and Westbrook confiscated 16 magazines "for no reason." ECF No. 1 at p. 13. Douglas asserts that subsequently on June 2, 2008, he was told all "authorized personal property" was being removed from his cell. *Id*. Douglas claims that the Administrative Law Judge who issued a decision in his IGO case mailed his decision on June 24, 2008, but Douglas never received it.

Douglas states that, on August 28, 2008, he returned from court to find his legal documents and files were trashed by Westbrook, Mister, Persinger, Harmon, and Ahalt. Douglas claims that he asked Sergeant Ziolkowski to see a supervisor about what had been done to his cell, but Ziolkowski simply laughed in response. Douglas asserts that on September 3, 2008, he asked to see Captain Homes and Case Manager Bozeman so he could get copies of legal documents, but he was never provided copies. *Id*. at pp. 13 – 14. He states that he again wrote requests to have records copied for a "court date" on October 12, 15, and 16, 2008, but the copies were not provided. *Id*. at p. 14. He concludes he was denied access to court by virtue of being denied copies.

Douglas claims that on May 5, 2008, the drain and waste system backed up and flooded his cell, as well as the entire segregation unit. Douglas asked Officers Sterling and Merit for cleaning materials for his cell, but his request was denied. ECF No. 1 at p. 13.

Douglas also claims that Westbrook harassed him and threatened him with bodily harm on September 16, 2008, after removing a towel from inside his cell. Additionally, Douglas claims that there is a practice in place at Eastern Correctional Institution (ECI) to fabricate disciplinary charges against inmates, such as him, who exercise their First Amendment freedom of speech by filing complaints. ECF No. 1 at p. 15.

**Standard of Review**

<u>Motion to Dismiss</u>

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the

> complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, __ U.S.__, 127 S.Ct. 1955, 1964-65 (2007) (footnotes omitted.). This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 1968-69. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility

to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(a) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d

774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Analysis**

<u>Statute of Limitations</u>

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose.  This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato,* 549 U.S. 384, 387 (2007), *citing*  *Owens v. Okure,* 488 U.S. 235, 249-250, (1989); *Wilson v. Garcia,* 471 U.S. 261, 279-280, (1985).  In Maryland the applicable statute of limitations is three years from the date of the occurrence.  *See* Md. Cts & Jud. Proc. Code Ann. §5-101.

Douglas's complaint was filed on January 28, 2011.  His claims concerning excessive force occurring on July 30, 2007; confinement in a filthy cell from July 30, 2007 through August 3, 2007, where he was deprived of medical attention and medications; and all other claims concerning events taking place before January 28, 2008, are time barred.  The only claim raised against Medical Defendants is the claim he was deprived of medical attention and medication during July 30, 2007 through August 3, 2007, therefore the Motion to Dismiss filed on behalf of Medical Defendants shall be granted.  With respect to the time-barred claims, Correctional Defendants' Motion to Dismiss shall also be granted.

<u>Conditions Claim</u>

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment under the Eighth Amendment.  *Rhodes v.*

*Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) *citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), *quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment

claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

Douglas claims that on May 5, 2008, the drain and waste system backed up and flooded his cell, as well as the entire segregation unit. Douglas asked Officers Sterling and Merit for cleaning materials for his cell, but his request was denied. ECF No. 1 at p. 13. Defendants assert that in the event of a sewage back-up or spill, inmate sanitation workers conduct clean-up. Cleaning materials are not provided to individual inmates to clean their own cells; rather, the inmates are removed from the cell and the inmate sanitation workers clean the cell under supervision of custody staff. ECF No. 26 at Ex. 11.

There is no allegation, let alone proof, that Douglas suffered a serious or significant physical or emotional trauma as a result of the sewage back-up into his cell. In addition, the undisputed evidence establishes that Douglas was not forced to stay in the cell with the sewage back-up for a significant period of time, nor was he denied cleaning materials as a means to simply disregard a potential risk to his health. Defendants are entitled to summary judgment on this claim.

<u>Food Service</u>

A claim regarding the amount or quality of food served to a prisoner is an Eighth Amendment claim requiring, at a minimum, an allegation of serious medical and emotional deterioration attributable to the challenged conditions. *See Lopez v. Robinson*, 914 F. 2d 486, 490 (4th Cir.1990) (*quoting Shrader v. White,* 761 F.2d 975, 979 (4th Cir.1985)). "Missing one

meal as an isolated event does not deprive an inmate of basic nutritional needs." *Islam v. Jackson*, 782 F.Supp.1111, 1114 (E.D.Va.,1992).

Douglas's claims are that he was denied breakfast on February 4, 2008, by Officers Davis and Gunter; and was served a different, less appetizing meal than the general population received on October 1, 2008, by Officer Ashby. ECF No. 1 at pp.11, 12, and 14. Specifically, general population was served chicken and he was served a half-cooked, cold veal patty. *Id*. at p. 14. He does not allege he suffered an injury as a result of the conduct alleged. The claim fails on its face; Defendants' Motion to Dismiss shall be granted with respect to this claim.

Access to Courts / Legal Materials

Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the

Case 8:11-cv-00255-DKC   Document 47   Filed 02/09/12   Page 11 of 12

doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Douglas relies on several instances where his mail was delayed and items of legal mail were not received in a timely manner. The complaint, however, does not describe even one instance of an actual injury resulting from the alleged delays such as a missed deadline. Indeed, Douglas litigated his claim concerning the conditions under which he was confined from July 30, 2007 to August 3, 2007, before the IGO and was awarded $2000 in damages. ECF No. 26 at Ex. 17, p. 28. Thus the failure to provide copies, as well as the alleged delays in mail and missing legal documents sent to a private party, are insufficient to state a claim. The claim will be dismissed.

Harassment and Retaliation

Verbal abuse of inmates by guards, without more, does not state a claim of assault. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *see also Carter v. Morris*, 164 F. 3d 215, 219, fn. 3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim). Douglas claims that on September 16, 2008, Westbrook "snatched" a towel away from him while he was washing up and threatened him with bodily harm. The threat alleged in this case is not condoned by this court, but it falls short of acts forbidden by the Fourth, Fourteenth, or Eighth Amendments. *See Pink v. Lester*, 52 F.3d 73, 75 (1995) ("[N]ot all undesirable behavior by state actors is unconstitutional.").

"'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (*quoting Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). "In the prison

context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) *quoting Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994). Douglas claims that there is a practice in place at Eastern Correctional Institution (ECI) to fabricate disciplinary charges against inmates who exercise their First Amendment freedom of speech by filing complaints. ECF No. 1 at p. 15. The claim is conclusory and offers no factual basis for the conclusion that staff at ECI are engaging in retaliation against inmates who complain. Defendants are entitled to dismissal with respect to the claim regarding retaliation.

**Conclusion**

The claims which are not time-barred either lack a factual basis for relief or the undisputed facts establish Defendants are entitled to summary judgment in their favor. A separate Order follows.


Date:  February 9, 2012                      /s/
                                             DEBORAH K. CHASANOW
                                             United States District Judge